STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
Doc. No. CV-17-185

GOVERNOR PAUL R. LEPAGE, )
)
Petitioner )
)
v. )
)
ATTORNEY GENERAL )
JANET T. MILLS, )
)
Respondent )

**ORDER ON PETITIONER'S
M.R. CIV. P. 80C APPEAL**

Before the Court is Petitioner Governor Paul LePage's administrative appeal of
Respondent Attorney General Mills' decision to join a lawsuit challenging the United States
Department of Homeland Security decision concerning the Deferred Action for Childhood
Arrivals program. The Attorney General is represented by Assistant Attorney Generals Thomas
Knowlton and Jonathan Bolton. Governor Paul Le Page is represented by Attorneys Bryan
Dench and Amy Dieterich.

I.    Background

Respondent Attorney General Mills joined the State of Maine in a law suit against the
U.S. Department of Homeland Security, Elaine C. Duke as its acting secretary, and the United
States of America in the United States District Court for the Northern District of California
challenging the Department of Homeland Security's decision to rescind the Deferred Action for
Childhood Arrivals (DACA) program on September 11, 2017. *See California v. United States
Department of Homeland Security*, No. 17-cv-05235-MEJ (N.D. Cal.).

1

In a letter dated September 22, 2017, Petitioner Governor LePage asked the Attorney General to send him either documentation of a request by the Legislature that the Attorney General enter into litigation on behalf of the State, or a copy of a court filing voluntarily dismissing the State from the above-mentioned litigation. In that same letter the Governor stated that the Attorney General only had the authority to enter into federal litigation in another state on behalf of Maine with the authorization of the Governor or the Legislature. The Governor also claimed in the letter that the Attorney General's actions in entering the lawsuit were ultra vires. Furthermore, the Governor stated that he disagreed with the position taken by the Attorney General and that her actions "will prevent me from discharging my executive duties under the Maine Constitution and state law to, among other things, set State policy on such matters."

The Attorney General responded by letter that same day, stating: "Thank you for your letter of today's date. Please see *Opinion of the Justices*, 2015 ME 22, ¶ 22, 112 A.3d 926; *Superintendent of Insurance v. Attorney General*, 558 A.2d 1197, 1199-1200; *Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 558 (Me. 1973)."

The Governor brought this action in the Superior Court on October 12, 2017, asking the Court to find that the Attorney General exceeded her authority by bringing a federal suit in a different state on behalf of the people of Maine without being directed to do so by the Governor or Legislature. The Governor asks the Court to declare that the Attorney General's actions were ultra vires and in violation of 5 M.R.S. § 191. The Governor seeks an order of the Court that "the Attorney General may not participate in litigation outside of the State of Maine without expressly being requested to do so by the Governor" or the Legislature and that the Attorney General "must dismiss any currently-maintained litigation outside the State of Maine in the name of the State" that neither the Governor nor Legislature requested. The Attorney General moved the

2

Court to dismiss the Governor's action on November 8, 2017. Supplemental briefing on the Motion to Dismiss was filed on March 1, 2018. The Court denied the Attorney General's Motion to Dismiss on March 7, 2018 and issued a Notice and Briefing of Schedule ordering further briefing on the Governor's administration appeal, and also required the Attorney General's Office to file the administrative record. The Court now reviews the Governor's appeal.

II.     Standard of Review

When reviewing the determination of a government agency, the Court looks to issues of statutory construction de novo. *Munjoy Sporting & Ath. Club v. Dow*, 2000 ME 141, ¶ 7, 755 A.2d 531. If the agency's decision was committed to the reasonable discretion of the agency, the party appealing has the burden of demonstrating that the agency abused its discretion in reaching the decision. *See Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. "An abuse of discretion may be found where an appellant demonstrates that the decision maker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Id*. Ultimately, the petitioner must prove that "no competent evidence" supports the agency's decision. *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *Bischoff v. Bd. of Trustees*, 661 A.2d 167, 170 (Me. 1995)). The mere fact that there is "[i]nconsistent evidence will not render an agency decision unsupported." *Id*.

III.     Discussion

The Governor's action is based upon his characterization of the Attorney General's action in initiating the lawsuit against the Department of Homeland Security as "ultra vires". According to Black's Law Dictionary, "ultra vires" is defined as "Unauthorized; beyond the scope of power

3

allowed or granted by a corporate charter or by law." The powers and duties of the Attorney

General are set out by Maine Revised Statutes Title 5, Section 191. Section 191 states:

> The Attorney General or a deputy, assistant or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called into question, in all the courts of the State and in those actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either House of the Legislature. All such actions and proceedings must be prosecuted or defended by the Attorney General or under the Attorney General's direction.

5 M.R.S. 191(3).¹ The Law Court interpreted Section 191 in *Superintendent of Ins. v. Attorney*

*General*. The question before the court in that case was "whether the Attorney General is

obligated to represent and defend the Superintendent of Insurance in an action seeking review of

a rate order issued by the Superintendent." *Id.* at 1198. The facts of the case were that the

Consumer and Antitrust Division of the Office of the Attorney General moved to intervene in a

public hearing on a proposal to increase certain non-group health insurance rates held by the

Superintendent of Insurance. *Id.* Assistant Attorney Generals from the General Government

Division had counseled the Bureau of Insurance on this matter. *Id.* The Superintendent rendered

a decision, and the Attorney General moved to reopen the matter for modification. *Id.* Upon the

Superintendent's denial, the Attorney General appealed the Superintendent's decision to the

Superior Court, as did two non-group subscribers. *Id.* One of the Assistant Attorney Generals

who had previously advised the Superintendent entered a limited appearance on his behalf with

the intention of withdrawing as soon as the Superintendent was able to secure private counsel. *Id.*

at 1199. After retaining private counsel, the Superintendent moved the court for dismissal of the

---

¹ Section 192 states: "All civil actions to recover money for the State shall be brought by the Attorney General or by the district attorney in the name of the State. The Attorney General shall appear before the departments and tribunals of the United States and the committees of Congress to prosecute all claims of the State against the United States." 5 M.R.S. § 192.

4

Attorney General's Rule 80C appeal and moved to strike the Attorney General's appearance in the non-party subscriber's Rule 80C appeal on the basis that the Attorney General had a conflict of interest. *Id.* The Superintendent also filed for relief in the form of an order of mandamus requiring the Attorney General to provide legal services to the Superintendent in this matter and to reimburse the Superintendent for fees paid to the private counsel. *Id.* The Superior Court granted the Superintendent's requested relief. *Id.*

On review, the Law Court cited to a prior decision stating:

> As the chief law officer of the State, [the Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the *protection of public rights*.

*Id.* (*citing Lund ex. Rel. Wilbur v. Pratt*, 308 A.2d 554, 558 (Me. 1973)). The Law Court found that the Attorney General has " a significant degree of autonomy" and that, in the absence of legislation stating otherwise, the Attorney General "typically may exercise all such authority as the public interest requires." *Id.* (*citing State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 268-269 (5th Cir.), *cert. denied*, 429 U.S. 829 (1976)). The Law Court made the finding that the use of the word "shall" in 5 M.R.S. § 191, stating "The Attorney General, a deputy, assistant, or staff attorney *shall* appear for the State, …", does not "remove all discretion and require that the Attorney General represent all state agencies regardless of his view of the public interest." *Id.* at 1200. Furthermore, the Law Court found that "when the Attorney General disagrees with a state agency, he is not disqualified from participating in a suit affecting the public interest.…" *Id.* at 1204.

As in *Superintendent of Ins.*, in the current case, the Governor seeks to enforce a narrow interpretation of Section 191. Here, the Governor argues that the Attorney General exceeded her

authority by participating in a federal action on behalf of the State. The Governor cites to the language of the statute, suggesting not unreasonably that the language is clear and unambiguous. However, as is detailed above, the Law Court has repeatedly interpreted the powers of the Attorney General broadly, allowing that she "may institute, conduct, and maintain all such actions and proceedings as [s]he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights." In addition, the Law Court has interpreted the language "shall appear" to mean something other than what the plain meaning of the phrase might suggest. Given that interpretation, this Court believes it must be the Law Court that decides if the holding of *Superintendent of Ins.* should be overturned or modified as it might deem appropriate.

Given the current state of the law, the Court finds that the Attorney General did not abuse her discretion by entering the litigation captioned *California v. United States Department of Homeland Security*, No. 17-cv-05235-MEJ (N.D. Cal.).[2]

IV.    Conclusion

The Court denies the Petitioner's M.R. Civ. P. 80C appeal.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE:    10 | 12 | 18

Michaela Murphy
**Justice, Superior Court**

---

[2] The Governor suggests in his Petitioner's Brief that the Court would review the Attorney General's letter dated September 22, 2017 as the operative decision before the Court. As explained in the Court's Order on Defendant's Motion to Dismiss, the Court construed the Governor's Complaint as a petition for relief pursuant to M.R. Civ. P. 80C seeking review of the Attorney General's decision to participate in *California v. United States Department of Homeland Security*.